UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| EMIL J. ADAMS,<br>    PLAINTIFF,<br><br>-V-<br><br>DAN WYANT ET AL.,<br>    DEFENDANTS. | No. 1:14-CV-66<br><br>HONORABLE PAUL L. MALONEY |

**OPINION**

I. **BACKGROUND**

In June 2011, Plaintiff Emil J. Adams, a Michigan landowner, found himself as a defendant in an enforcement action brought in state court by the Michigan Department of Environmental Quality (MDEQ). (*See* ECF No. 31-14 at PageID.360.) The MDEQ, which enjoys a "conservation easement" over Adams' land, sought injunctive relief ordering Adams to restore disturbed wetlands and inland lakes and streams on the property. (*Id.* at PageID.363–65.) Many months after the MDEQ instituted the state action, Adams filed an "after-the-fact" application for a permit (ECF No. 1 at PageID.4), even though he admits such a permit is statutorily barred when the MDEQ has already issued an order of restoration. (ECF No. 31 at PageID.132); Mich. Comp. Laws §§ 324.30104(4), 324.30306(5). Years after commencement of the state actions Adams filed this case in federal court, alleging constitutional violations sounding in due process and equal protection because, as the facts bore out, on "very infrequent" occasions, "after-the-fact" permits have been issued following an order of restoration. (*See* ECF No. 31-10 at PageID.271.) More particularly, Adams sought a federal court order demanding the MDEQ "process and grant Plaintiff's application for an after-the-fact permit." (ECF No. 1 at PageID.6.) *But cf. infra* note 3. Defendants

have since filed a motion for dismissal on a variety of abstention grounds, the *Younger* doctrine being the most applicable. (ECF No. 28.)

II.    **LEGAL FRAMEWORK**

   *A.    Summary Judgment*

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008). The facts, and the inferences drawn from them, must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The function of the district court "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Resolution Trust Corp. v. Myers*, 9 F.3d 1548 (6th Cir. 1993) (citing *Anderson,* 477 U.S. at 249).

Further, "[s]ummary judgment is an appropriate means of resolving issues of law," *Fass v. Ruegg*, 379 F.2d 216, 220 (6th Cir. 1967), such as abstention. *Cf. Traughber v. Beauchane*, 760 F.2d 673, 676 (6th Cir. 1985) ("Because theories of state and federal law, and expressions of federalism and comity, are so interrelated in the decision to abstain such dispositions are elevated to a level of importance dictating *de novo* appellate review.").

   *B.    Younger Abstention*[1]

---

[1]    An argument for abstention has not been waived here because the state is not "urging the federal court to proceed to the merits of a constitutional claim." *O'Neill v. Coughlan*, 511 F.3d 638, 642 (6th Cir. 2008). With that said, Defendants' failure to file a pre-answer motion to dismiss on abstention grounds is mystifying because this action has, from its birth, been "a textbook case for *Younger* abstention." *Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1075 (6th Cir. 1998).

Generally, "federal courts lack the authority to abstain from the exercise of jurisdiction that has been conferred." *New Orleans Pub. Serv., Inc. v. New Orleans*, 491 U.S. 350, 358 (1989). "Underlying [this] assertion[] is the undisputed constitutional principle that Congress, and not the Judiciary, defines the scope of federal jurisdiction within the constitutionally permitted grounds." *Id.* (citing *Kline v. Burke Constr. Co.*, 260 U.S. 226, 234 (1922)). However, "there are some classes of cases in which the withholding of authorized equitable relief because of undue interference with state court proceedings is 'the normal thing to do.'" *New Orleans*, 491 U.S. at 359 (quoting *Younger v. Harris*, 401 U.S. 37, 45 (1971)).

"The *Younger* doctrine, which counsels federal-court abstention when there is a pending state proceeding, reflects a strong policy against federal intervention in state judicial processes in the absence of great and immediate irreparable injury to the federal plaintiff." *Moore v. Sims*, 442 U.S. 415, 423 (1979).

"*Younger* abstention applies when the state proceeding (1) is currently pending, (2) involves an important state interest, and (3) affords the plaintiff an adequate opportunity to raise constitutional claims." *Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1074 (6th Cir. 1998) (citing *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

"Although *Younger* arose in the context of a state criminal proceeding, the Supreme Court has extended its principles to civil enforcement actions, such as the state proceeding here." *Id.*; *see, e.g., Trainor v. Hernandez*, 431 U.S. 434, 444 (1977) (state civil fraud proceeding to recover improper benefits by state welfare department); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975) (state civil nuisance action against adult theater by local sheriff and prosecutor).

"Moreover, the federal plaintiff does not have to seek injunctive relief against an ongoing state proceeding for a federal court to abstain. *Younger* abstention also applies in federal

3

declaratory judgment actions because they involve 'precisely the same interference with and disruption of state proceedings' as an injunction." *Carroll*, 139 F.3d at 1074 (quoting *Samuels v. Mackell*, 401 U.S. 66, 72 (1971)).

### III.   ANALYSIS[2]

Ultimately, the Court refuses to "interfere with the pending state action by maintaining [this] parallel federal action involving claims that could have been raised in the state case." *Id.*

Adams asserts that "[a]n order from this Court directing Defendants to process his after-the-fact permit application would be independent of th[e] state court proceeding—without any interference." (ECF No. 31 at PageID.126.) Respectfully, this is nonsense. If the Court ordered the MDEQ to "grant Plaintiff's application for an after-the-fact permit" (*see* ECF No. 1 at PageID.6)—the only equitable relief the complaint demands[3]—the order would effectively terminate the

---

[2]   As an initial matter, Defendants' motion for summary judgment is deficient in some respects. Not a single exhibit was attached and many factual assertions are unsupported with citations. *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). However, existing factual disputes are not *material* to the underlying law and the relief Defendants seek here. *See, e.g., Fass*, 379 F.2d at 220 ("Summary judgment is an appropriate means of resolving issues of law.").

[3]   Adams, perhaps recognizing the weakness in his argument, now misrepresents his complaint. While he has validly "waived" *money damages* by affidavit (*see* ECF No. 31-1 at PageID.147), *cf. St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292 (acknowledging that although federal jurisdiction is not destroyed by a post-removal act, a claim for *monetary* damages may be reduced or eliminated "by affidavit"), Adams cannot transform a pleaded equitable demand into something else by casting his complaint in an inaccurate light. The unamended complaint unequivocally demands specific equitable relief—that this Court order the MDEQ "grant" an application for a permit. The absence of a permit gave rise to the pending state court enforcement action in the first place. No leave to amend the complaint was ever filed. *See* Fed. R. Civ. P. 15(a)(2). In an affidavit, Adams states: "I am seeking an order from this Court directing the Defendants to process my application for an after-the-fact permit for my farming activities on my land." (ECF No. 31-1 at PageID.147); but that merely restates part of what he demands. (*See* ECF No. 1 at PageID.6.) In order to "grant" a permit application, the MDEQ would, of course, have to "process" the application.

Alternatively, it's possible that Adams has attempted to amend his complaint in his *responsive brief*. (*Compare* ECF No. 1 at PageID.6 (demanding the court order the MDEQ to "grant Plaintiff's application for an after-the-fact permit") *with* ECF No. 31 at PageID.126 (characterizing the complaint as one that merely "seeks an order compelling the Defendants . . . to process his application for an after-the-fact permit and asserting that "his interest in having his application processed by the MDEQ that is at issue, not his interest in the actual permit"). However, this is not permitted. *See, e.g., Chambliss v. Coca-Cola Bottling Corp.*, 274 F. Supp. 401, 409 (E.D. Tenn. 1967), *aff'd* 414 F.2d 256 (6th Cir. 1969), *cert. denied*, 397 U.S. 916 (1970), *rehearing denied*, 397 U.S. 1018 (1970) ("Even under liberal federal rules of pleading, the practice of amending by brief seems inappropriate."). An assertion in a brief that does not reflect the reality of a complaint is misleading and not relevant for an abstention doctrine analysis.

Finally, even *if* Adams only sought an order to the MDEQ to "process" an application, such an order would still "interfere" with the pending *enforcement* action. Regardless, he may raise his constitutional claims in state court.

4

pending state enforcement action. An order to that effect would moot the entire action, severing the state court's authority over a matter of core state concern that has been pending since 2011. "When a person is the target of an ongoing state action involving state interests, the state defendant cannot interfere with the pending state action by maintaining a parallel federal action involving claims that could have been raised in the state case." *Carroll*, 139 F.3d at 1074.

Accordingly, this action is "a textbook case for *Younger* abstention." *Id.* at 1075 ("*Younger* abstention applies when the state proceeding (1) is currently pending, (2) involves an important state interest, and (3) affords the plaintiff an adequate opportunity to raise constitutional claims.").

First, "[t]he [state's] civil enforcement action against [Adams] is currently pending in state court . . . ." *Id.* The case (although currently stayed) has been pending in the state circuit court for over five years, with nearly 200 docket entries. (*See* ECF No. 33-2.) The state case had been pending for over two years "at the time the federal complaint was filed in this case," *Sun Refining & Mktg. Co. v. Brennan*, 921 F.2d 635, 639 (6th Cir. 1990), and substantial time has been devoted to the underlying action brought by the MDEQ—with no resolution to date. (*See* ECF No. 33-2.)

Even where a state trial court has entered judgment, the Supreme Court has "h[e]ld that *Younger* standards must be met to justify federal intervention in a state judicial proceeding as to which a losing litigant has not *exhausted his state appellate remedies*." *Brennan*, 921 F.2d at 640 (emphasis added) (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975)).

Adams must concede that the state court case is "pending" (*see* ECF No. 31 at PageID.138), at least for *Younger* abstention purposes. He cites to the fact that the Sixth Circuit remarked once, in passing dicta, that it does not "generally seem a good idea to stay federal litigation in favor of state litigation that is itself already stayed." *RSM Richter, Inc. v. Behr America, Inc.*, 729 F.3d 553, 558 (6th Cir. 2013) (analyzing *Colorado River* doctrine). However, the case is clearly "on-going"

5

for *Younger* abstention purposes according to binding precedent. *See Brennan*, 921 F.2d at 639; *cf. Carroll*, 139 F.3d at 1080 (Moore, J., dissenting in part) (noting the majority had held abstention proper even though the state case had been proceeding for five years, or at a "glacial pace").

Second, the proceedings unquestionably "involve the state's important interest in enforcing its [environmental regulations]." *Carroll*, 139 F.3d at 1075. The "state's important interest" in this case is heightened because the state itself enjoys a "conservation easement" over the very property at issue. (ECF No. 31-10 at PageID.262.) Adams has admitted that he "cleared and tilled certain parcels of land to grow feed for [his] cattle"; while he "thought those activities were exempt from the permitting requirements," he does not generally dispute that the MDEQ has a macro-interest in enforcing its environmental regulations and policy and a micro-interest in its "environmental easement" over the property at issue. (*See, e.g., id.* at PageID.317; ECF No. 31-1 at PageID.147.)

Third, Adams "may raise all of [his] claims—state, federal, and constitutional—under the state court's general and concurrent jurisdiction," to the extent those claims lie. *Carroll*, 139 F.3d at 1075. Because "[t]he plaintiff bears the burden of showing that state law *barred presentation* of his or her constitutional claims," *Squire v. Coughlan*, 469 F.3d 551, 556 (6th Cir. 2006) (emphasis added) (quoting *Fieger v. Thomas*, 74 F.3d 740, 745 (6th Cir. 1996)), the third prong is almost always satisfied if the "current proceedings" fall under a state court's general jurisdiction. *See, e.g., Younger*, 401 U.S. at 49 ("Here a proceeding was already pending in the state court, affording Harris an opportunity to raise his constitutional claims."); *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987) ("[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state proceedings will afford an adequate remedy."); *see also Squire*, 469 F.3d at 556 ("Abstention is appropriate 'unless state law *clearly* bars the interposition of the constitutional claims.'"); *cf. Juidice v. Vail*, 430 U.S. 327, 337 (1977)

("Should the state courts ultimately have sustained the validity of the state statutory system, appellees would have had final recourse, available as of right, to th[e] [Supreme] Court, 28 U.S.C. § 1257(2)."). Adams may "*present* his . . . federal claims" in state court, *Pennzoil*, 481 U.S. at 15, though he presciently acknowledges that at least his due-process claims will likely fail.[4]

In sum, abstaining here will "avoid[] duplication of legal proceedings, defer[] to the state's sovereignty over its law, and respect[] the principles of comity inherent to our federalism." *Carroll*, 139 F.3d 1075. Plaintiff has asserted no exceptions to the *Younger* abstention doctrine. *See Dombrowski v. Pfister*, 380 U.S. 479, 490 (1965). Since the remaining relief demanded is only equitable in nature, the Court must dismiss, and not stay, this action. *See Carroll*, 139 F.3d at 1076.

---

[4] Even if it did not abstain, the Court would have probably had to dismiss Adams's complaint for failure to state a claim upon which the relief he sought could be granted, given his waiver of any "monetary damages." (*See* ECF No. 31-1 at PageID.147.) Adams concedes the state statutes at issue textually "bar[] an application for an after-the-fact permit." That is, Plaintiff *admits* that state law *forbids* an application for the very permit that he *demands* through equitable relief, but cites deposition testimony that the MDEQ has apparently violated state law in at least a few other situations. (ECF No. 31 at PageID.132); Mich. Comp. Laws §§ 324.30104(4), 324.30306(5). The statutes alone will prove fatal to his *due-process claims*, as in order to establish those claims, there must be a property or liberty interest *as defined by state law*. *See, e.g., Bailey v. Floyd Cty. Bd. of Educ.*, 106 F.3d 135, 141 (6th Cir. 1997) (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)) ("[A] property interest exists and its boundaries are defined by 'rules or understandings that stem from an independent source such as state law.'").

The statutory text is abundantly clear: "the department may accept an application for a permit"—only if "restoration is not ordered by the department." Mich. Comp. Laws §§ 324.30306(5), 324.30104(4). The law recognizes no property interest in an "after-the-fact permit," and indeed forbids it, after restoration has been ordered. *See id.* Thus, the remedy here would probably not have been *equitable* in nature; a federal court cannot order the state to violate the law, as Adams urges, no more than a state court can order the state to violate the law. *See Maxwell v. Dep't of Envtl. Quality*, No. 248241, at *2 (Mich. Ct. App. Oct. 21, 2004) ("By its plain language, [Michigan law] gives the DEQ discretion to process an ATF application, but specifically limits the exercise of that discretion to the period before an order to restore has been issued.").

Even more concerning here is the blatantly unlawful equitable demand in the complaint, in which Adams urges the Court to not just "process"—but "*grant* [his] application for an after-the-fact permit, *as provided for* in MCL 324.30104(4) and MCL 324.30306(5)." (ECF No. 1 at PageID.6 (emphasis added).) Now, of course, Adams inaccurately asserts that "[h]e only requests an order directing the MDEQ to *process* his after-the-fact application." (ECF No. 31 at PageID.134 (emphasis added)); *see supra* note 3. Regardless, the Court could not provide equitable relief for an equitable wrong in such a manner that is itself inherently unlawful. Even if the MDEQ violated the law on a couple of other occasions, "two wrongs don't make a right," as the proverb goes.

## **ORDER**

For the reasons contained in the accompanying Opinion, the Court **GRANTS** Defendants' Motion for Summary Judgment, and **ABSTAINS** from presiding over this action. (ECF No. 28.)

**IT IS SO ORDERED**.

Date:   July 29, 2016                              /s/ Paul L. Maloney
                                                   Paul L. Maloney
                                                   United States District Judge